IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DURRELL LEMON                                  *

Petitioner,                                    *

v.                                             *           Civil Action No. PX-16-3212

WARDEN FRANK BISHOP and                        *
THE ATTORNEY GENERAL OF
THE STATE OF MARYLAND,                         *

Respondents.                                   *

***

## MEMORANDUM OPINION

Durrell Lemon[1] brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 2009 conviction in Baltimore City Circuit Court on nineteen counts associated with an armed robbery. ECF No. 1. The Petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability. The Court also denies as moot Lemon's request for appointed counsel.

### I.      Background

In January 2009, Lemon was tried with co-defendant, Derrick McDonald, in the Circuit Court for Baltimore City for an array of offenses related to an armed robbery of a Rent-A-Center. ECF No. 5-2 at 4.[2] After trial, the jury found Lemon guilty of two counts of armed robbery; two

---

[1] Confusion surrounds the correct spelling of Lemon's first name. ECF No. 19 at 4, n1. For clarity and consistency, the Court will use the spelling on Lemon's federal habeas petition, which is "Durrell."
[2] Before the case was submitted to the jury, the Circuit Court granted the defense motion for acquittal on the charges of attempted first degree murder, attempted second degree murder, conspiracy to commit first degree murder and conspiracy to commit second degree murder. ECF Nos. 19-4 at 44; 5-2 at 2; 19-6 at 16-24.

counts of first degree assault; two counts of the use of a handgun in the commission of a crime of violence; two counts of wearing, carrying or transporting a handgun; two counts of conspiracy to commit armed robbery; two counts of conspiracy to commit first degree assault; two counts of conspiracy to use a handgun in a crime of violence; two counts of conspiracy to wear, carry or transport a handgun; and three counts of possessing a firearm after a disqualifying conviction. ECF Nos. 5-2, at 2; 19-6 at 16-24.

The testimony introduced at trial established that Lemon and McDonald entered the Rent-A-Center on November 27, 2007.  ECF No. 19-2 at 25-26, 306-319.  Rent-A-Center employee, Gary Hughes, testified that McDonald pulled out a roll of duct tape and told Hughes to put his hands behind his back.  ECF No. 19-2 at 310.  Hughes also identified Lemon as the person who pulled a handgun from his pocket and asked the location of the money.  ECF No. 19-2 at 310-311. Hughes told both men that the money was in the register and in the office.  ECF No. 19-2 at 311.

Hughes next resisted McDonald's efforts to duct tape him and refused to go into the office. ECF No. 19-2 at 312.  Lemon threatened to kill Hughes after he could not open the safe.  ECF No. 19-2 at 311.  McDonald proceeded to choke Hughes and Hughes fought back.  ECF No. 19-2 at 313-314.  McDonald then told Lemon to kill Hughes.  ECF No. 19-2 at 314.  Hughes heard a "bang" and realized he had been shot in the leg.  ECF No. 19-2 at 314.

Rent-A-Center employee, Donte Gilliam, went outside to check on merchandise in a truck shortly after McDonald and Lemon entered the store.  ECF No. 19-2 at 24-25.  When Gilliam re-entered the store, he was restrained with a belt and robbed at gunpoint of his wedding ring and the money in his pockets.  ECF No. 19-2 at 32.  After Lemon and McDonald left the store, Gilliam drove Hughes to the hospital.  ECF No. 19-2 at 33-34.

2

As to the evidence specifically identifying Lemon as the shooter, Hughes had selected Lemon out of a photo array that police had presented to him during the investigation. ECF No. 19-2 at 326-327. Hughes also worked with a police sketch artist to develop composite sketches of both defendants. ECF No. 19-2 at 328-330. At trial, Hughes was presented with one of the sketches in which he identified Lemon. ECF No. 19-2 at 330-331. Donte Gilliam likewise testified that he had identified the "gunman" and McDonald in photo arrays. ECF No. 19-2 at 36, 46-51.

Both men also testified as to the certainty of their identifications. ECF No. 19-2 at 66; ECF No. 19-3 at 71. Gary Hughes in particular, told the jury he was "very certain" that Lemon was the man that robbed and shot him. ECF No. 19-2 at 318; ECF No. 19-3 at 12; ECF No. 19-3 at 71. After three days of testimony from the two victims, a lay witness, and law enforcement officers, the jury found Lemon guilty on all counts. ECF No. 19-6 at 16-24. He was sentenced on March 26, 2009 to consecutive sentences totaling one hundred ten years imprisonment. ECF No. 19-6 at 30-63.

On April 2, 2009 and July 1, 2009, Lemon, through counsel, moved modify his sentence. ECF No. 5-1 at 7, 9.[3] Lemon filed a third, similar motion on August 6, 2009. ECF No. 5-1 at 7. The April 2, 2009 motion was held *sub curia* by court order on April 17, 2009. ECF No. 5-1 at 8. On August 11, 2009, the Circuit Court held a hearing on the modification requests. ECF No. 5-1 at 9-10. Although the docket does not clearly reflect whether all modification motions were addressed, the Court ultimately reduced the imprisonment term to 100 years and held the remainder *sub curia*, indicating that "will consider further reduction if given reason." ECF No. 5-1 at 9-10.

---

[3] Lemon was charged under docket numbers: 108010018, 108010019, 108010020, 108010021, 108010022, 108010023, 108010024, and 108010025. ECF No. 5-1. The motions to modify are identically identified in all eight docket sheets. For brevity, the Court has cited to the record where the motions appear in docket number 108010018.

Lemon also appealed his conviction to the Maryland Court of Special Appeals; the court affirmed the conviction by unpublished opinion on December 8, 2011.  ECF No. 5-2.  He next sought certiorari with the Maryland Court of Appeals, which was denied on April 23, 2012.  ECF No. 19-1 at 104-116, 118.

On July 8, 2013, Lemon filed a *pro se* application for postconviction relief in the Circuit Court for Baltimore City.  ECF No. 19-1 at 119-145.  In it, Lemon argued that his trial counsel was ineffective for, among other reasons, failing to introduce a photograph of purportedly taken close in time to the robbery which showed that Lemon had facial hair different than the shooter.  ECF No. 19-1 at 127-129**.**  Lemon also complained that counsel failed to properly advise him on the implications involved in his right to testify and on failing to strike a juror for cause.  ECF No. 19-1 at 127-129; 133-139, 144.  Lastly, Lemon challenged the trial court's failure to disclose two jury notes as depriving him of due process and complained that appellate counsel had been ineffective for failing preserve the issue on appeal.  ECF No. 19-1 at 130-133.  Lemon's post-conviction counsel added ineffectiveness claims for failing to pursue an alibi defense or offer evidence as to Lemon's dominant hand (left) in the face of video surveillance footage showing the shooter had the gun in his right hand.  ECF No. 19-1 at 146-148.

On April 18, 2014, after an evidentiary hearing, the post-conviction court denied relief.  ECF No. 19-1 at 149-170.  On May 15, 2014, Lemon moved leave to appeal the denial of his postconviction application. ECF Nos. 5-1 at 12; 11-3. The Court of Special Appeals denied Lemon's application on February 8, 2016 and two subsequent motions for reconsideration on May 6, 2016.  ECF Nos. 1-3; 1-6.

On September 21, 2016, Lemon filed the presently pending federal Petition.  In it, he raises four claims: (1) trial counsel was ineffective because he failed to investigate and prepare for trial;

(2) his due process rights were denied and trial counsel was ineffective when the trial court failed to disclose juror notes; (3) trial counsel was ineffective for failing to present an alibi defense; and (4) postconviction counsel was ineffective for failing to raise all issues is his application for leave to appeal to the Maryland Court of Special Appeals.

## II.    Standard of Review

This Court may grant a petition for a writ of habeas corpus solely to reach violations of the United States Constitution or federal law.  28 U.S.C. § 2254(a) (2018) *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).  In reviewing the decisions of the post-conviction court, this Court must give "considerable deference to the state court decision," and may not grant habeas relief unless the state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Nicolas v. Att'y Gen. of Md*., 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).  This Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence" Id.

For a state court's decision to be contrary to established federal law, the must have arrived at a legal conclusion at odds with a decision of the United States Supreme Court, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*

*Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014).   As to an unreasonable determination, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411).   Rather, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes*, 751 F.3d at 238 (quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014)).   "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal marks and citations omitted).

## II.   Analysis

### A.  Timeliness

Respondents initially asked the Court to dismiss the Petition as time barred because Lemon failed to file the petition within one year after his conviction became final.   28 U.S.C. § 2244(d)(l)(A).   Although Respondents are correct that a federal petition must be filed within one year after the challenged conviction becomes final, the period may be tolled during the pendency of any state post-conviction proceedings. *See Id.* at § 2244(d)(2).   When Respondents first urged dismissal on timeliness grounds, it remained an open question whether unresolved motions to reconsider a sentence brought under Maryland Rule 4-235 sufficed to toll the clock, and the Fourth Circuit was poised to resolve the issue in *Mitchell v. Green*, 922 F.3d 187 (4th. Cir. 2019).   Thus, this Court held the Petition in abeyance pending the outcome of *Mitchell*.   On April 17, 2019**,** the Fourth Circuit concluded that that such motions do toll limitations under § 2244(d)(1)(A). *Mitchell*, 922

F.3d at 198.  This Court thereafter lifted the stay in this case and is now prepared to resolve the Petition.

Although the procedural history of Lemon's criminal case is less than a model of clarity, it appears that several post-conviction motions, filed seriatim, tolled the one-year clock such that the Petition is timely.  On April 23, 2012, Lemon's judgment became final.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (under § 2244(d)(1)(A), a judgment that is not reviewed in the Supreme Court "becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in [the Supreme] Court . . . expires").  By this time, Lemon had already filed three motions for modification of sentence (April 2, 2009, July 1, 2009, and August 6, 2009).  At the hearing, the Circuit Court held the motions *sub curia,* and concluded that it would entertain further reduction for cause.  Under Maryland Rule 4-345, any such sentencing motion remains active for five years from the date of filing.[4]  Thus, the latest filed modification motion terminated by operation of law on August 6, 2014, and the one-year clock remained tolled for the entirety of this time.

Lemon next filed his post-conviction petition on July 8, 2013, which was denied on April 18, 2014.  Lemon timely moved for leave to appeal, which was not denied until February 8, 2016.  Lemon lastly moved for reconsideration which was denied on May 6, 2016.  Accordingly, at a minimum, the one year clock had been continuously tolled until May 6, 2016.  Thus, the Petition, filed 138 days later on September 21, is timely.

Respondents alternatively contend that the claims must be dismissed as procedurally defaulted or if reached on the merits, denied outright.  The Court considers each argument in turn.

---

[4] A five-year limit on the court's authority to modify a sentence was added to the Rule effective July 1, 2004. *See, Tasker v. Maryland*, No. AW 11-CV-1869, 2013 WL 425040, at *3 (D. Md. Jan. 31, 2013), *aff'd,* 517 F. App'x 172 (4th Cir. 2013), and *abrogated by Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019).

### B.  Procedural Default

A claim is procedurally defaulted if a petitioner failed to pursue the claim at every stage of state court proceedings, through to the highest state court with jurisdiction to hear it.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim in post-conviction petition); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A claim may also be procedural defaulted if a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).  As the Fourth Circuit Court of Appeals has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim."  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998), citing *Coleman*, 501 U.S. at 731-32.  Under Maryland law, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . in a prior [post-conviction] petition."  Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i).  A rebuttable presumption exists that this waiver is knowing and intelligent.  *Id.* at § 7-106(b)(2).

Importantly, procedural default may be excused if a petitioner can demonstrate (1) both "cause" for the procedural default and that he will suffer "prejudice" if the claims are not considered on their merits; or (2) that failure to consider the defaulted claim(s) would result in a miscarriage of justice, that is, the conviction of someone who is actually innocent.  *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998).

"Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). "Prejudice" exists if a petitioner can show not merely that the alleged errors "constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the] entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims so as to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314–15 (1995).

With this standard in mind, the Court separately addresses each claim.

### 1.  Claim 1: Ineffective Assistance of Trial Counsel

Lemon's first claim centers on his counsel's performance at trial. Lemon contends that counsel was ineffective for failing to introduce a photograph of Lemon taken four days before the incident which depicted him with a goatee (the "goatee photo"). This goatee photo, argues Lemon, would have undermined the reliability of the witness identifications. ECF No. 1 at 10. Respondents maintain this claim is procedurally defaulted because the Maryland Court of Special Appeals denied Lemon's application for leave to appeal on procedural grounds, namely failure to comply with an order to supplement the record with the goatee photo. ECF No. 19 at 41-42. Although the goatee photo had been introduced at the postconviction hearing, it had not been included in the application for leave to appeal. ECF Nos. 19-8 at 75; 19-1 at 172. The Maryland Court of Special Appeals summarily denied leave to appeal on February 8, 2016. From this, Respondents maintain that it is "apparent from the record" the Maryland Court of Special Appeals

had denied Lemon's application for leave because he failed to provide the requested photograph. ECF No. 19 at 41.

The United States Supreme Court has adopted the "plain statement" rule for procedural default. "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal citations omitted).  Here, the order denying leave to appeal issued by the Maryland Court of Special Appeals makes no reference to a state procedural bar.  Accordingly, this claim is not procedurally defaulted and the Court will address it on the merits *infra*.

### 2. Claims 2 and 3: Due Process Violation and Ineffective Assistance of Counsel for failure to disclose adverse jury notes and failure to pursue "alibi" defense

In his second claim, Lemon challenges as a due process violation the Circuit Court's failure to discuss with the parties two juror notes and counsel's failure to object to the same.  ECF No. 1 at 12.  In the third claim, Lemon takes issue with his trial counsel's failure to pursue the "alibi" that Lemon is left-handed where the surveillance video depicts the shooter holding the firearm in his right hand.  *Id.* at 13.  Because neither claim was raised in his application for leave to appeal the denial of his application for postconviction relief to the Maryland Court of Special Appeals, Respondent maintains that the claims are procedurally defaulted.  ECF No. 19 at 44-48.

Respondents are correct that neither claim had been raised in the application for leave to appeal.  ECF No. 11-3.  Further, exhaustion of state court remedies does require pursuing the claim through the Court of Special Appeals.  *See* Md. Code Ann., Crim. Proc. § 7-109.  If the Court of

Special Appeals denies the application, the claim is exhausted.  Md. Code Ann., Cts. & Jud. Proc. § 12-202.[5]

Petitioner does not seriously contest that the claims are procedurally defaulted.  Rather, he asks the Court to excuse the default because his postconviction counsel failed to raise these claims before the Court of Special Appeals.  ECF No. 20 at 6.  To be sure, the Supreme Court in *Martinez v. Ryan,* 566 U.S. 1 (2012), recognized that where post-conviction counsel erred in failing to raise ineffectiveness of trial counsel as a ground for relief at the initial stage of collateral proceedings, this error may provide grounds excuse procedural default of the ineffectiveness claim down the line.  *Id.* This is so, the Court reasoned, because "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoners claims." *Id.* at 10-11.  But the exception announced in *Martinez* does not extend beyond such failures at the "initial review" stage, that is, at the post-conviction proceedings.  *See id.* at 15-16.  The *Martinez* Court clearly announced that its "holding . . .[did] not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings*, and petitions for discretionary review in a State's appellate courts." *Id.* (internal citations omitted) (emphasis added).  Accordingly, any failures by Petitioner's postconviction counsel during the appeal of his postconviction application do not constitute "cause" to excuse the procedural default of Claims 2 and 3.

Lemon also has not made any showing of actual innocence or that failure to reach the claims would cause a fundamental miscarriage of justice.  Nor does the Court's review of the

---

[5] If the Court of Special Appeals grants the application but denies relief on the merits of the claim, the claim is not exhausted until a petition for writ of certiorari to the Court of Appeals is filed and either denied or adjudicated. *Williams v. State*, 292 Md. 201, 210-211 (1981).

record discern any cause and prejudice which would excuse the procedural default. Thus, the claims must be dismissed as defaulted.

### 3.  Claim 4: Ineffective Assistance of Postconviction Counsel

In his last claim, Lemon argues that his postconviction counsel had been ineffective for failing to comply with the Court of Special Appeals directive to supplement the record with the goatee photo. ECF No. 1 at 14. Lemon acknowledges that Claim 4 is a "new issue," in that he has not previously raised this argument before any state tribunal. *Id.* Putting to the side any questions of exhaustion, the claim must be dismissed because procedural errors of this kind cannot serve as a basis for federal habeas corpus relief. *Bryant v. State of Md.*, 848 F.2d 492, 493 (4th Cir. 1988). To the extent Claim 4 can be construed as an argument for "cause" for procedurally defaulting Claim 1, as discussed above, attorney error during the appeal of postconviction proceedings is not "cause" to excuse procedural default. In any event, Claim 1 is not procedurally defaulted and is ripe for review on the merits.

### C.  Merits Review

In Claim I, Lemon contends that his trial counsel had been ineffective for failing to introduce the "goatee photo." ECF No. 19-1 at 127. Lemon raised this precise argument before the post- conviction court and pursued the denial of relief before the Court of Special Appeals. ECF No. 19-8. Oddly, however, the Circuit Court did not reach this issue. ECF No. 19-1 at 149-170. The court instead summarily denied the claim, finding that it "need not consider allegations of error that are not supported by legal authority" because if Lemon "[did] not identify a right that was violated, there is nothing for a hearing judge to consider." *Id.* at 153-155.

The post-conviction court's decision, as Respondents acknowledge, is problematic. ECF No. 19 at 33-35, 42. For one, the court appears to have addressed an argument not made – whether trial counsel was ineffective for failing to object to the detective's testimony regarding the photo array. ECF No. 19-12 at 153. Similarly, the post-conviction court's cited authority bears little resemblance to reasons for the claimed ineffectiveness. *See, e.g.*, ECF No. 19-1 at 155 (Citing *Baldwin v. Warden*, 243 Md. 326, 328 (1966)); *Washington v. Warden*, 1 Md. App. 56, 59 (1967) (facts in support of the allegation are wrong); *Oken v. State,* 343 Md. 256 (1996) (counsel not ineffective for failing to object to evidence that was never introduced); *State v. Purvey*, 129 Md. App. 1, 8-11 (1999) (trial counsel not required to object to admissible evidence); *Harris v. State*, 303 Md. 685, 717 (1985) (same).

Based on this, the Court must conclude that the post-conviction court did not reach the issue presented here. And even though the Court of Special Appeals affirmed the post-conviction decision, it did so without explanation. ECF No. 1-3. Without any reason to suggest the Court of Special Appeals reached the same conclusion for reasons different than the post-conviction court, this Court must presume affirmance was on the same grounds. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Thus, the Court finds that it must reach the merits because the post-conviction court simply did not. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013) (holding "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge.*"*). The Court reviews this claim *de novo*.

Every accused enjoys the Sixth Amendment right to "the effective assistance of counsel." *Garza v. Idaho*, 139 S. Ct. 738, 743-44 (2019) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Pursuant to *Strickland v. Washington*, a petitioner alleging deprivation of

effective assistance must demonstrate both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct; petitioner, therefore must show that counsel's performance rendered the proceedings fundamentally unfair. *Id.* at 689, 700. In that assessment, the court must endeavor to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. As to prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

Before reaching the claims, the Court first summarizes the relevant evidence generated at Lemon's post-conviction hearing related to the goatee photo. Lemon's ex-wife, Sonia Sharps, testified that she provided the photo to trial counsel, Warren Brown, sometime in January 2008. ECF No. 19-8 at 74-75. The photo had been date stamped November 24, 2007, three days before the robbery. Ms. Sharps, however, admitted to altering the photo in that she added the word "Hubby" using a cell phone application. ECF No. 19-8 at 76-77; ECF No.19-8 at 85-86.

Warren Brown testified he remembered little from the first meeting with Ms. Sharps, and had no recollection of being given anything. ECF No.19-8 at 95-96. Brown also reviewed the goatee photo on the stand and confirmed that he no recollection "at all" of being given the photo. ECF No. 19-8 at 97.

On this record, the Court will assume that Brown had been given the goatee photo and made nothing of it. Even so, the record fails to establish that counsel's failure to introduce the photograph at trial amounted to ineffective assistance. *See McHone v. Polk*, 392 F.3d 691, 704

(4th Cir. 2004).  The only sponsoring witness of the photo was Lemon's then-wife, who would be forced to concede that she could, and did, alter the written overlay on the picture itself, at least to stamp the word "Hubby" across Lemon's forehead.  ECF No. 1-6 at 3.   With that obvious concession, the photograph as a fair and accurate depiction of Lemon would have been significantly undermined.  Trial counsel's decision not to risk the State discrediting the witness, or exclusion of the proffered photo altogether, represents sound trial strategy, not ineffective assistance.

Moreover, even if counsel were ineffective in failing to introduce the goatee photo, the choice was harmless.  If Lemon's stated purpose for introducing the photograph was to demonstrate that he was *not* the perpetrator captured in the video, the sheer weight of the evidence to the contrary eclipses its probity.  Both victims had testified at trial without equivocation that Lemon had committed the robbery and that he had shot Hughes.  ECF No. 19-2 at 66; ECF No. 19-3 at 71; ECF No. 19-2 at 318; ECF No. 19-3 at 12; ECF No. 19-3 at 71.  It is highly unlikely that an altered photo sponsored by Lemon's wife is the kind of evidence that would shake the foundation of two strong identifications.   In short, Lemon has not demonstrated how the introduction of this photograph would have led to a different result at trial.  Thus, Brown's failure to introduce the goatee photo at trial cannot alone sustain an ineffectiveness claim.  The Petition as to Claim 1 must be denied.

### III.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct.

759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted).  Lemon has not made the requisite showing.  Accordingly, the Court declines to issue a certificate of appealability.  Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied entirely.  A separate Order follows.


_____3/25/22_____                              _____/S/_____
Date                                               Paula Xinis
                                                   United States District Judge